PEOPLE v LUKITY

Docket No. 110737. Argued November 9, 1998 (Calendar No. 5). Decided
    July 13, 1999.
      Chris A. Lukity was convicted by a jury in the Macomb Circuit Court,
      Michael D. Schwartz, J., of first-degree criminal sexual conduct
      involving his fourteen-year-old daughter. MCL 750.520b(1)(b); MSA
      28.788(2)(1)(b). The Court of Appeals, WAHLS, P.J., and HOOD and
      JANSEN, JJ., reversed and remanded for a new trial in an unpub-
      lished opinion per curiam on the ground that the defendant was
      denied the right to a fair trial on the basis of the cumulative effect
      of three errors: prosecution witnesses improperly testified regard-
      ing the complainant's character for truthfulness before the com-
      plainant testified and before the defendant attacked her character
      for truthfulness, the prosecutor improperly introduced evidence
      relating to the defendant's use of marijuana with his son, and an
      expert witness improperly testified that the complainant's behavior
      was consistent with that of a sexual abuse victim (Docket No.
      179955). The people appeal.
        In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER,
      and Justices CORRIGAN and YOUNG, the Supreme Court held:
        The admission of evidence bolstering the complainant's character
      for truthfulness was error, but it did not result in a miscarriage of
      justice that would justify reversal of the defendant's conviction.
      Further, the other two evidentiary errors found by the Court of
      Appeals were not, in fact, errors.
        1. Where a defense counsel attacks a witness' character for
      truthfulness in an opening statement, the prosecution may present
      evidence that supports the witness' character for truthfulness on
      direct examination. Character for truthfulness is a specific aspect
      of credibility that may be attacked or supported by opinion or rep-
      utation evidence, subject to the limitations that the evidence refer
      only to character for truthfulness and that evidence supporting a
      witness' character for truthfulness is admissible only after it has
      been attacked. In this case, in the absence of an attack on the com-
      plainant's character for truthfulness, the prosecution was not enti-
      tled, under MRE 608(a), to offer support for it. Further, evidence of
      the complainant's character for truthfulness is unresponsive to the
      defendant's contention that the complainant suffered emotional

problems that affected her ability to recount and describe—the contention the bolstering evidence was allegedly admitted to rebut. Because the evidence bolstering the complainant's character for truthfulness was inadmissible as a matter of law under MRE 608(a) when it had not been attacked, the trial court abused its discretion in allowing the prosecution to introduce such evidence.

2. MCL 769.26; MSA 28.1096 creates a presumption that preserved, nonconstitutional error is harmless. The presumption may be rebutted by a showing that the error resulted in a miscarriage of justice. The burden is on the defendant. The level of assurance for deciding whether a preserved, nonconstitutional error justifies reversal of a conviction is the "more probable than not" standard. Any higher standard would place a greater burden on defendants than the statute envisions, and a lower standard would be inconsistent with the statute's rebuttable presumption of harmlessness. In this case, it does not affirmatively appear that the error asserted has resulted in a miscarriage of justice. Accordingly, the error is not a proper ground for reversal of the defendant's conviction under § 26.

3. On direct examination, the defendant essentially claimed that he only engaged in appropriate activities with his children. This claim was clearly evidence of a pertinent trait of character in the context of a trial on charges that he raped his daughter, and was admissible under MRE 404(a)(1). It opened the door to cross-examination about whether he considered himself a role model and whether he tried to instill morals and values in his children. The cross-examination inquired into a specific instance of conduct to rebut defendant's claim that he only engaged in appropriate activities with his children. Where, as in this case, evidence of a pertinent character trait is admitted, MRE 405(a) allows cross-examination into relevant specific instances of conduct. Accordingly, the cross-examination regarding whether defendant smoked marijuana with his son was admissible under MRE 404(a)(1) and MRE 405(a). The prosecutor did not engage in misconduct by asking questions on cross-examination about use of marijuana with his son, and the trial court did not abuse its discretion in allowing the questions.

4. The trial court did not err in allowing an expert to testify that the complainant's behavior was consistent with that of a sexual abuse victim. In his opening statement, defense counsel raised the issue of complainant's postincident behavior, opening the door to such expert testimony. In the context of defendant's effective cross-examination and closing argument regarding the issue, any error in admitting this evidence would not have resulted in a miscarriage of justice that would justify reversal under § 26.

Justice BRICKLEY, concurring, stated that the provisions in MCL 769.26; MSA 28.1096 that a verdict is not to be disturbed unless "it shall affirmatively appear" that the error was prejudicial resolves what is the proper standard for reviewing whether error is harmless, and compellingly supports the majority's conclusion.

Reversed.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the word "affirmatively," as used in MCL 769.26; MSA 28.1096, does not include the meaning "in a sufficient fashion as to defeat a rebuttable presumption of harmlessness," as read by the majority. A more literal and simpler definition of affirmatively, implies an assertion that something is true.

In this case, the test of *People v Gearns*, 457 Mich 170 (1998), that the prosecution must prove that it was highly probable that erroneously admitted evidence did not contribute to the tainted verdict, should be applied. The majority crafts a "rebuttable presumption" under which the defendant must come forth with some showing that "it is more probable than not that the error was outcome determinative." However, in almost every criminal case, there will nearly always be testimony on at least tangential issues, untainted by any error, no matter how egregious. Thus, no matter what showing a defendant may make regarding how damning an error was, an appellate court will always be in a position to state that "a reasonable jury could have found" and rely on whatever untainted testimony (and inferences, tenable and otherwise) exists in the record. The majority's test will place the defendant in a position of not only having to demonstrate the harm wrought by the error, but also of having to counter suppositions and inferences from other evidence that are limited only by the number of witnesses offered and the imagination of the reviewing court.

*Frank J. Kelley*, Prosecuting Attorney, *Thomas L. Casey*, Solicitor General, *Carl J. Marlinga*, Prosecuting Attorney, *Robert John Berlin*, Chief Appellate Lawyer, and *Edward L. Graham*, Assistant Prosecuting Attorney, for the people.

*John D. Lazar* for the defendant.

TAYLOR, J. Defendant was convicted by a jury of first-degree criminal sexual conduct, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b), committed against his fourteen-year-old daughter. He was sen-

tenced to 25 to 50 years' imprisonment. The Court of
Appeals reversed his conviction and remanded the
matter for a new trial. Unpublished opinion per
curiam, issued October 3, 1997 (Docket No. 179955).
It held that defendant was denied the right to a fair
trial on the basis of the cumulative effect of three
errors: 1) prosecution witnesses improperly testified
regarding complainant's character for truthfulness
before complainant testified and before defendant
attacked her character for truthfulness, 2) the pros-
ecutor improperly introduced evidence relating to
defendant's use of marijuana with his son, and 3) an
expert witness improperly testified that complainant's
behavior was consistent with that of a sexual abuse
victim. We granted the prosecution's application for
leave to appeal. 457 Mich 864 (1998). We find error in
the admission of evidence bolstering complainant's
character for truthfulness before defendant attacked
it, but conclude that this error was harmless. Further,
we find no error in the admission of the other chal-
lenged evidence. We accordingly reverse the Court of
Appeals decision and reinstate defendant's conviction.

### STATEMENT OF FACTS

At trial, complainant testified that defendant sexu-
ally assaulted her over forty times in a two-year
period, including "[m]aybe two" times in May, 1992.
(The charge at issue arises out of an alleged incident
of sexual intercourse on or about May 1, 1992.) Com-
plainant testified that she finally reported the sexual
abuse to a teacher in May, 1993. She also testified
that she attempted suicide following her report of the
abuse.

Defendant's son testified that he observed his father engaging in inappropriate wrestling with his sister. He testified that defendant later "said that he was very sorry that he did this and that it was her [complainant] that said to do these things not him and that he just said he really screwed up and just kept saying he was sorry." Defendant's son also testified that defendant told him that complainant "had eyes like her mother's . . . ."

Defendant testified that he did not engage in sexual intercourse with complainant. He explained that his conversation with his son about being sorry did not relate to any sexual activity.

### STANDARD OF REVIEW

At issue are three alleged errors regarding the admission of evidence. The decision whether to admit evidence is within the trial court's discretion; this Court only reverses such decisions where there is an abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998). Accordingly, when such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law.

### I. EVIDENCE SUPPORTING COMPLAINANT'S CHARACTER FOR TRUTHFULNESS

The first issue before us is whether the trial court abused its discretion in allowing the prosecution to introduce evidence supporting complainant's charac-

ter for truthfulness before she had even testified. Specifically, the trial court allowed the prosecution to present the testimony of complainant's teacher, complainant's brother, complainant's mother and the investigating police officer regarding complainant's good character for truthfulness. Resolution of this issue requires a determination whether defense counsel's opening statement attacked her character for truthfulness.

MRE 608(a) states:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Where a defense counsel attacks a witness' character for truthfulness in an opening statement, the prosecution may present evidence that supports the witness' character for truthfulness on direct examination. *United States v Cruz*, 805 F2d 1464, 1479-1480 (CA 11, 1986); *United States v Jones*, 763 F2d 518, 522 (CA 2, 1985).

Here, in his opening statement, defense counsel stated that defendant's defense was that the charged incident "didn't happen." Specifically, defense counsel stated in pertinent part:

> [T]here are only two people on the face of this Earth who [are] in a position to know what happened and there may be evidence from which you may come to the conclusion that one or both of them don't even know what happened. Because there is a potential for evidence that one of the witnesses that will be offering testimony has serious

problems that may affect her ability to recount and describe.

The trial court found that this opening statement attacked complainant's credibility and accordingly overruled defendant's objection to evidence supporting complainant's character for truthfulness.

The trial court's ruling failed to note the distinction between credibility and character for truthfulness and the implications of this distinction. Credibility is defined as "[w]orthiness of belief; that quality in a witness which renders his evidence worthy of belief." Black's Law Dictionary (6th ed), p 366. Credibility may be attacked in numerous ways, e.g., demonstrating a witness' inability to perceive or remember the event at issue. Attacking a witness' character for truthfulness is one of the means by which a witness' credibility may be attacked. Thus, the two terms are not synonymous; rather, character for truthfulness is a specific aspect of credibility. MRE 608(a) states that "credibility" may be attacked or supported by opinion or reputation evidence, subject to two limitations: 1) that the evidence refer only to "character for truthfulness" and 2) that evidence supporting a witness' "character for truthfulness" is only admissible after the witness' "character for truthfulness" has been attacked.

Here, defense counsel did not accuse complainant of intentionally lying, but he asserted that she had emotional problems that affected her ability to recount and describe and that the charged incident, which she was expected to describe, did not happen. These assertions indicated that her testimony would not be worthy of belief. Accordingly, defense counsel's opening statement did attack her credibility. But

it did not attack her character for truthfulness, i.e., it did not suggest that she was lying. An attack on a witness' *credibility*, like the one at issue, that is not an attack on the witness' *character for truthfulness* does not trigger MRE 608(a)(2). In the absence of an attack on complainant's character for truthfulness, the prosecution was not entitled, under MRE 608(a), to support her character for truthfulness. Further, we note that evidence of complainant's character for truthfulness is simply unresponsive to defendant's contention that complainant suffered emotional problems that affected her ability to recount and describe—the contention the bolstering evidence was allegedly admitted to rebut. Because the evidence bolstering complainant's character for truthfulness was inadmissible as a matter of law under MRE 608(a) when her character for truthfulness had not been attacked, the trial court abused its discretion in allowing the prosecution to introduce such evidence.

Having concluded that the trial court erred in admitting this evidence, we must next determine whether this error requires reversal of defendant's conviction. In *People v Mateo*, 453 Mich 203, 212; 551 NW2d 891 (1996), this Court held:

> In Michigan, the harmless-error rule is primarily embodied in statute [MCL 769.26; MSA 28.1096], with additional statements of the doctrine in our court rule [MCR 2.613(A)] and evidentiary rule [MRE 103].

Section 26 provides in pertinent part:

> No judgment or verdict shall be . . . reversed . . . in any criminal case, on the ground of . . . the improper admission . . . of evidence, . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirma-

tively appear that the error complained of has resulted in a
miscarriage of justice.

The *Mateo* Court held at 206:

> Under our statute, as under federal law, a reviewing court
> is not to find nonconstitutional preserved error harmless
> simply because it concludes the jury reached the right
> result. Disregarding errors that do not affect substantial
> rights, the reviewing court is to examine the record as a
> whole and the actual prejudicial effect of the error on the
> factfinder in the case at hand. Where the error asserted is
> the erroneous admission of evidence, the court engages in a
> comparative analysis of the likely effect of the error in light
> of the other evidence. [Citations omitted.]

It explained at 215:

> Simply stated, . . . reversal is only required if the error
> was prejudicial. That inquiry focuses on the nature of the
> error and assesses its effect in light of the weight and
> strength of the untainted evidence.

However, because it was unnecessary to the resolu-
tion of the matter before it, the *Mateo* Court did not
decide the issue of "the level of assurance an appel-
late court on direct review must have that a pre-
served, nonconstitutional error was not prejudicial
and thus harmless." *Id.* at 218, 220-221.

In *People v Gearns*, 457 Mich 170; 577 NW2d 422
(1998), a majority of this Court decided that issue by
adopting the "highly probable" standard for pre-
served, nonconstitutional error. Under this standard,
the test is whether "it is highly probable that the
[erroneously admitted] evidence did not contribute to
the verdict[] in light of the strength and weight of the
untainted evidence." *Id.* at 173. This test effectively
creates a presumption that such an error justifies

reversal of a conviction unless the prosecutor demonstrates that the error is harmless.

The test articulated by the *Gearns* majority is inconsistent with § 26 because it places the burden on the prosecutor to demonstrate that a preserved, nonconstitutional error is harmless. In contrast, § 26 states that the types of error listed *are not grounds for reversal unless* it shall "affirmatively appear" that such an error resulted in a miscarriage of justice. Thus, § 26 creates a presumption that preserved, nonconstitutional error is harmless, which presumption may be rebutted by a showing that the error resulted in a miscarriage of justice.[1] The *Mateo* Court correctly so held at 211:

> [Section 26] should not be construed to require actual innocence, but, rather, it should be viewed as a legislative directive to *presume* the validity of verdicts and to *reverse only* with respect to those errors that *affirmatively appear* to undermine the reliability of the verdict. [Emphasis added.]

Section 26, with its rebuttable presumption, clearly places the burden on the defendant to demonstrate that a preserved, nonconstitutional error resulted in a

---

[1] The dissent misreads our opinion by suggesting that we have held that § 26 creates a rebuttable presumption solely because of the words "affirmatively appear" that are found in the section. The dissent's understanding is flawed. We have reached the conclusion that there is such a presumption through the language and structure of the statute as a whole, which when read in its entirety creates this presumption. Specifically, § 26 states in pertinent part, "No judgment or verdict shall be . . . reversed . . . in any criminal case, on the ground of [listed types of error] *unless* in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." (Emphasis added.) This language speaks for itself. Moreover, we are not the first court to understand this language in this fashion. The *Mateo* Court similarly concluded that § 26 creates such a presumption, as noted below.

miscarriage of justice. We are therefore convinced that the test adopted by the *Gearns* majority, which placed the burden on the prosecution to demonstrate that it was "highly probable" that a preserved, nonconstitutional error "did not contribute to the verdict," is wrong because it conflicts with the burden of proof established by § 26. We accordingly overrule the *Gearns* test.[2]

Both *Mateo* and *Gearns* indicated the necessity of determining a "level of assurance" for deciding whether a preserved, nonconstitutional error justified reversal of a conviction. In the context of § 26, with its rebuttable presumption of harmlessness, this would be articulated as the level of assurance that a preserved, nonconstitutional error resulted in a miscarriage of justice. The *Mateo* Court suggested three possible levels of assurance: highly probable, more probable than not, and reasonable likelihood. *Mateo* at 219. Section 26 itself provides no specialized level of assurance. In the absence of any such provision in the statute, we believe that the "more probable than not" standard is proper. Given that § 26 places the burden on a defendant to demonstrate a miscarriage of justice, any higher standard, e.g., "highly probable," would place a greater burden on defendants than § 26 envisions. It would be troubling indeed if a defend-

---

[2] We do not lightly overrule prior decisions of this Court. Yet the rule of stare decisis is not an inexorable command. *People v Graves*, 458 Mich 476, 481; 581 NW2d 229 (1998). "When it becomes apparent that the reasoning of an opinion is erroneous, and that less mischief will result from overruling the case rather than following it, it becomes the duty of the court to correct it." *Id.*, citing *Attorney General ex rel Barnes v Midland Co Bd of Supervisors*, 178 Mich 513, 518; 144 NW 883 (1914). That is the situation we face here with the *Gearns* test, which is of recent vintage and has perforce had little reliance placed upon it. Indeed, the principled concurrence of Justice BRICKLEY, who authored the lead opinion in *Gearns*, supports this approach.

ant's demonstration that it was more probable than
not that a preserved, nonconstitutional error resulted
in a miscarriage of justice was deemed insufficient to
justify a new trial. On the other hand, a lower stan-
dard, like "reasonable likelihood," would be inconsis-
tent with § 26's rebuttable presumption of harmless-
ness. Accordingly, we conclude that the level of
assurance that a preserved, nonconstitutional error
justifies reversal of a conviction is the "more proba-
ble than not" standard.

In summary, we reiterate that § 26 controls judicial
review of preserved, nonconstitutional error.[3] Section
26 places the burden on the defendant to demonstrate
that "after an examination of the entire cause, it shall
affirmatively appear that the error asserted has
resulted in a miscarriage of justice." We agree with
the *Mateo* Court's holding that reversal is only
required if such an error is prejudicial and that the
appropriate inquiry "focuses on the nature of the
error and assesses its effect in light of the weight and
strength of the untainted evidence." *Mateo* at 215. The
object of this inquiry is to determine if it affirmatively
appears that the error asserted "undermine[s] the reli-
ability of the verdict." *Id.* at 211. In other words, the
effect of the error is evaluated by assessing it in the
context of the untainted evidence to determine
whether it is more probable than not that a different
outcome would have resulted without the error.
Therefore, the bottom line is that § 26 presumes that
a preserved, nonconstitutional error is not a ground
for reversal unless "after an examination of the entire

---

[3] In contrast, § 26 does not apply to preserved, constitutional error. See
*Mateo* at 206; *People v Anderson (After Remand)*, 446 Mich 392, 404-407;
521 NW2d 538 (1994).

cause, it shall affirmatively appear" that it is more probable than not that the error was outcome determinative.[4]

Here, there was no physical evidence of the alleged assault. However, this case did not present a simple credibility contest between complainant and defendant. The testimony of complainant's brother (who is also defendant's son) included discussion of an apology by defendant in which he virtually confessed that he had sexually assaulted complainant.[5] Defendant testified at trial and contended that this apology did not relate to any sexual contact with complainant. However, defendant confirmed that he made such an apology and offered no explanation for his statements to the effect that it was complainant's idea "to do these things" and that she "had eyes like her

_____

[4] The dissent criticizes our effort to give meaning to § 26 not on the basis of any claimed misunderstanding by us of the language of § 26 but rather on the basis that this reading will produce unfortunate results. Whether it will or not is unknown at this time. But if the standard mandated by the Legislature in § 26 proves unworkable or unfair, the Legislature can, of course, be expected to modify it. This Court's duty is to follow the law articulated by the Legislature rather than to adopt a standard that a majority of the Court merely prefers in contravention of the plain language of an applicable statute.

[5] In addition to the direct testimony quoted above, this apology was also explored on cross-examination of complainant's brother:

*Q.* Now, this discussion with your father you described it in detail what he supposedly admitted to having done?

*A.* Are you talking about the conversation we had at the table when I was helping him move?

*Q.* That's correct.

*A.* You want me to try and give you his exact words?

*Q.* Well, you said that he said he had screwed up and that he was sorry and that he started to cry and you described he said that [complainant] and your mother had similar eyes. I think that's what you said.

*A.* He also said that he was sorry, that it was her idea, kind of putting—trying to put the blame on [complainant].

mother's." The apology, with these unexplained references, is strong evidence that defendant was admitting and apologizing for the charged conduct with complainant. Complainant's brother's testimony about this apology, confirmed in large part by defendant, is untainted by the improper bolstering of complainant's character for truthfulness. In the context of this untainted evidence, defendant has not demonstrated that it is more probable than not that the outcome would have been different without this error. Thus, it does not "affirmatively appear that the error complained of has resulted in a miscarriage of justice." Accordingly, this preserved, nonconstitutional error is not a proper ground for reversal of defendant's conviction under § 26.

## II. EVIDENCE THAT DEFENDANT SMOKED MARIJUANA WITH HIS SON

The second issue before us is whether the trial court erred in allowing the prosecution to cross-examine defendant regarding his use of marijuana with his son.

MRE 404 states:

(a) *Character Evidence Generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Character of Accused.* Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same . . . .

MRE 405 states:

(a) *Reputation or Opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputa-

tion or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

Here, on direct examination, defendant testified regarding his role as a father and provider and gave examples of the types of activities he engaged in with his children.[6] He essentially claimed that he only engaged in appropriate activities with his children. This claim was clearly "evidence of a pertinent trait of character" in the context of a trial on charges that defendant raped his daughter. Thus, this evidence offered by the accused was admissible under MRE 404(a)(1). This testimony opened the door to cross-examination about whether he considered himself a "role model" and whether he tried to "instill morals and values" in his children. Defendant responded affirmatively to these questions. The prosecutor then asked whether defendant provided marijuana to or smoked marijuana with his son. This cross-examination inquired into a specific instance of conduct to rebut defendant's claim that he only engaged in appropriate activities with his children. Where, as here, evidence of a pertinent character trait is admitted, MRE 405(a) allows cross-examination into relevant specific instances of conduct. Accordingly, the cross-examination regarding whether defendant smoked marijuana with his son was admissible under MRE 404(a)(1) and MRE 405(a). The prosecutor did

---

[6] The defendant introduced this evidence almost immediately on direct examination. He testified, "We would watch T.V., we like to go on picnics. We liked picnics. I pla[yed] catch with them, sports, you know, basketball. When they were younger they played soccer, we did that, Cub Scouts. My daughter was in Girl Scouts. I wasn't involved with that except helping with her projects. Just, you know, things that you do with your kids, try to spend time with them."

not engage in misconduct by asking these questions on cross-examination, and the trial court did not abuse its discretion in allowing it.

Defendant and the Court of Appeals improperly framed this issue as whether this "bad act" evidence was admissible under MRE 404(b). MRE 404(b) states:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
>
> (2) The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence.

Here, the prosecutor did not attempt to introduce evidence that defendant smoked marijuana with his son to prove that defendant had acted in conformity with his character for marijuana use. Rather, he merely cross-examined defendant regarding this issue, as permitted by MRE 405(a), in response to defendant's testimony, under MRE 404(a)(1), that he was a father who only engaged in appropriate activities with his children. This cross-examination under MRE 405(a) simply did not implicate MRE 404(b). Thus, the prosecutor was not obligated, under MRE 404(b), to demonstrate a purpose under which such evidence would be admissible or to provide notice.

Accordingly, we find no error in this cross-examination and, therefore, no justification for reversal of defendant's conviction on this basis.

### III. EVIDENCE THAT COMPLAINANT'S BEHAVIOR WAS CONSISTENT WITH THAT OF SEXUAL ABUSE VICTIMS

The third issue before us is whether the trial court erred in allowing an expert to testify that complainant's behavior was consistent with that of a sexual abuse victim.

In *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), this Court reiterated general principles regarding child sexual abuse expert testimony:

> (1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty.

It also clarified aspects of such testimony:

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Id.* at 352-353.]

The *Peterson* Court specified two situations in which an expert may testify that a victim's behavior was consistent with that of a sexual abuse victim:

> Unless a defendant raises the issue of the particular child victim's post-incident behavior *or* attacks the child's credibility, an expert may not testify that the particular child vic-

tim's behavior is consistent with that of a sexually abused child. Such testimony would be improper because it comes too close to testifying that the particular child is a victim of sexual abuse. [*Id.* at 373-374 (emphasis added).][7]

Here, Judith Schiap[8] testified that complainant's psychiatric behaviors were consistent with those of a sexual abuse victim. She testified about characteristics that fit within a sexual abuse victim profile. She acknowledged that some of the characteristics in the profile were also consistent with other traumas and specifically stated that suicide attempts were consistent with traumas other than sexual abuse.

Defendant's theory was that complainant had emotional problems, unrelated to any sexual abuse, that made her testimony incredible. In his opening statement, defense counsel asserted that complainant had "serious problems that may affect her ability to recount and describe." This theory raised the issue of complainant's post-incident behavior, e.g., her suicide attempts. Under *Peterson*, raising the issue of a complainant's post-incident behavior opens the door to expert testimony that the complainant's behavior was consistent with that of a sexual abuse victim. Accordingly, the trial court did not abuse its discretion in allowing Schiap to so testify.

Moreover, defendant effectively cross-examined Schiap and convincingly argued in closing that the

---

[7] The *Peterson* Court stated that a defendant attacks the complainant's credibility when he "highlights behaviors exhibited by the victim that are also behaviors within [the child sexual abuse accommodation syndrome] and alludes that the victim is incredible because of these behaviors." *Id.* at 374, n 13. Here, defendant did not attack complainant's credibility in this manner.

[8] At the time she testified, Schiap had a bachelor's degree in psychology, was clinical director of the child adolescent unit of a psychiatric facility, and had twenty-two years of experience in the field.

fact that a behavior is "consistent" with the behavior of a sexual abuse victim is not dispositive evidence that sexual abuse occurred. Specifically, he argued that "almost any behavior is not inconsistent with being a victim of sexual assault." In the context of defendant's effective cross-examination and closing argument regarding this issue, any error in admitting this evidence would not have resulted in a miscarriage of justice that would justify reversal under § 26.

Accordingly, we find no error in the admission of this expert witness testimony that justifies reversal of defendant's conviction.

CONCLUSION

For these reasons, we conclude that the admission of evidence bolstering complainant's character for truthfulness was error here, but that this error did not result in a miscarriage of justice that would justify reversal of defendant's conviction under § 26. Further, we conclude that the other two evidentiary errors found by the Court of Appeals were not, in fact, errors.[9] We accordingly reverse the Court of Appeals decision and reinstate defendant's conviction.

---

[9] We also disagree with the Court of Appeals comment regarding a portion of the prosecutor's closing argument. The relevant portion of the closing argument stated:

"May 1, 1992. We chose that date because we have to choose a date. We have to indicate on or about, Judge Schwartz said, on or about a certain date that the crime occurred. In that case, we have forty or so sexual molestations. You pick one. We picked May 1, 1992 because you heard [the complainant] say that that was the time of the Regina High School Parade or some event. That is how she knew the date of May 1, 1992."

The Court of Appeals concluded that the prosecutor improperly asked the jury to pick a date. However, in context, it is clear that the prosecutor

WEAVER, C.J., and CORRIGAN and YOUNG, JJ., concurred with TAYLOR, J.

BRICKLEY, J. I concur in the majority opinion, and write separately to acknowledge its discussion of the proper standard for reviewing whether error is harmless.

In *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998), we held that a court may not reverse a conviction unless it finds that it was "highly probable" that the error in question was not prejudicial. *Id.* at 205. Today the majority overrules our decision in *Gearns*, and holds that a court must not reverse a conviction unless it finds that it is "more probable than not" that the error in question was prejudicial. *Ante* at 495.

The harmless error statute states that "[n]o judgment or verdict shall be . . . reversed . . . unless in the opinion of the court, after an examination of the entire cause, *it shall affirmatively appear* that the error complained of has resulted in *a miscarriage of justice.*" MCL 769.26; MSA 28.1096 (emphasis supplied). Our cases agree that the phrase "miscarriage of justice" means "prejudicial," and this means simply that the error influenced the verdict. *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). The question before us, then, is how certain must the court be that the error was prejudicial?

In *Gearns*, we adopted dictum in *Mateo* stating that the appropriate level of certainty was "whether it is highly probable that the challenged evidence did not contribute to the verdict . . . ." *Id.* at 205, citing *Mateo, supra* at 219. While I agree as a matter of pol-

_____

was describing the process by which May 1, 1992, was chosen and was not inviting the jury to pick some other date.

icy that this level of certainty is appropriate, I am unable to reconcile the *Gearns* test with Michigan's harmless error statute.

The statute states that the verdict should not be disturbed unless "it shall affirmatively appear" that the error was prejudicial. MCL 769.26; MSA 28.1096. The majority's standard is more consistent with this language than the standard we set forth in *Gearns*.[1]

Because the language of the statute resolves this question and compellingly supports the majority's conclusion, I concur.

CAVANAGH, J. I must dissent from both the majority's decision and its effort to recast this case into a vehicle with which to begin the process of both rewriting and simultaneously rendering effectively pointless large portions of our standards of review for error in criminal cases.

I

In *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998), this Court continued down the path begun in *People v Mateo*, 453 Mich 203, 212; 551 NW2d 891 (1996), adopting the highly probable test of Justice Traynor for instances of preserved, nonconstitutional error. The essence of that test was that the prosecution must prove that it was highly probable that erroneously admitted evidence did not contribute to the

---

[1] "Affirmative" is defined as "[t]hat which declares positively; that which avers a fact to be true; that which establishes . . . ." Black's Law Dictionary (6th ed) at 59. "Appear" is relevantly defined as "to be proved." *Id.* at 97. "Affirmative proof" is defined as "[e]vidence establishing the fact in dispute by a preponderance of the evidence." *Id.* at 1215. The definitions in the standard dictionaries are not significantly different. See *Random House Webster's College Dictionary*, pp 23, 66; *American Heritage Dictionary* (3d ed), pp 30, 88.

tainted verdict. As anyone who has ventured through the sixty-one pages and four opinions might note, *Gearns* and its companion were not easy cases, and there certainly was no lack of deliberation or debate among the Court. Now, but a year later, we are summarily told that *Gearns* was wrongly decided, and, moreover, so told by one whose views were heard among us in *Gearns*.[1]

II

In this case, as the majority is forced to agree,[2] there was clear error in the admission, before the complainant had even testified, of bolstering testimony regarding her character for truthfulness. By offering these "sneak previews" into complainant's

---

[1] Justice BRICKLEY is certainly free to come to a realization that he is in disagreement with his former view. Likewise, while Justice TAYLOR and the Chief Justice, upon finding that there is now a majority (even aside from Justice BRICKLEY) to join them, are likewise free to cast their formerly rejected view as our new rule. Such endeavors, however, are likely to suggest that the decisions of this Court are only as stable as its composition, and that changes in it might be presumed by some to evidence a mandate for wholesale changes in the other, even in the absence of the passage of time, changes in circumstances, or any other of the more noble reasons to reevaluate our past decisions.

There is a limit to the amount of error that can plausibly be imputed to prior courts. If that limit should be exceeded, disturbance of prior rulings would be taken as evidence that justifiable reexamination of principle had given way to drives for particular results in the short term. The legitimacy of the Court would fade with the frequency of its vacillation. [*Planned Parenthood of Southeastern Pennsylvania v Casey*, 505 US 833, 866; 112 S Ct 2791; 120 L Ed 2d 674 (1992).]

[2] To the extent this case can be built into a convenient vehicle to overrule *Gearns*, error, one would hope, must be found as an initial matter. On the other hand, it may be that simple rules of judicial restraint may soon be discarded as well, should there be a majority more concerned with "correcting" our past cases than the presence of any actual need to address such matters.

character for truthfulness, the prosecutor was able to build up her purported character for truthfulness before it was even attacked. The gate to the minefield that is character evidence is closely guarded by our court rules, and the Court's decision allowing the prosecutor to drag the jury down his selected path through that field was in error.

### III

The majority posits that *Gearns* is not true to MCL 769.26; MSA 28.1096, and thus must go. Nonetheless, the majority would look at the very same statute for the proposition that the statute "itself provides no specialized level of assurance." *Ante* at 494. In the words "affirmatively appear," of § 26, the majority finds lurking a rebuttable presumption of harmlessness. While the word "affirmatively," under our rules of statutory construction, must surely be given meaning, I cannot fathom any definition[3] of the word that includes a meaning such as "in a sufficient fashion as to defeat a rebuttable presumption of harmlessness." And yet, that is how the majority "reads" the statute:

> unless in the opinion of the court, after an examination of the entire cause, it shall *in a sufficient fashion as to defeat a rebuttable presumption of harmlessness*, appear that the error complained of is a miscarriage of justice.

---

[3] As a reference, we might note the definition given to affirmative, the root of affirmatively, by a less zealous source:

> affirmative . . . : *adj.* 1. Affirming or asserting that something is true or factual. 2. *Logic.* Denoting a proposition in which the predicate states something about the subject to be true, as *apples have seeds.—n.* 1. An affirmative word or phrase. 2. The side in a debate that upholds a proposition.—affirmatively *adv.* [*American Heritage Dictionary, Second College Ed*, 1982, p 84.]

Compare this, of course, with the Legislature's own wording, viewed without the added gloss of the majority:

> unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

A more literal and simpler definition of affirmatively, which, in its various forms, implies an assertion that something is true, might well speak more to a court having some level of assurance[4] than it does to any rebuttable presumption.[5] While claiming (correctly) that § 26 "controls" our inquiry, the majority must, in effect, add a considerable amount of text to the statute in order for it to "control" its chosen result.

IV

Were we in a world where stare decisis required more than a perfunctory disregarding note, I would apply the test of *Gearns*. The majority suggests that the testimony of complainant's brother, cited in the margin (*ante* at 496-497) was persuasive that such error was harmless. While an apology by the defendant was acknowledged by the brother, the quotation offered by the majority contains far more information (as cited by the majority) offered by the prosecutor

---

[4] I suppose that what level of assurance this would be might, in part, depend on one's definition of the remaining language in § 26, particularly miscarriage of justice. It would seem that the word affirmatively would likely have some level of assurance that there was a miscarriage of justice, but, again, the nature of the word itself is more an assertion that a proposition is correct than any requirement of a certainty thereof.

[5] It would not seem appropriate to presume our Legislature unfamiliar with or unable to include a rebuttable presumption in this statute should it so wish.

than was actually contained in the brother's rather ineffectual answers. While, if one were willing to build a house of inference cards, there certainly could be some evidence that defendant came close to confessing to the brother,[6] this merely points toward the primary problem with the majority's newfound standard of review.

The majority (as opposed to the statute itself) crafts a "rebuttable presumption" under which the defendant must come forth with some showing that "it is more probable than not that the error was outcome determinative." *Id.* at 496. Exactly how, I would ask, will this presumption ever be rebutted? In almost every criminal case, there will be at least two witnesses for the prosecution, the complainant and a law enforcement officer of some sort (and in those cases where the complainant is unavailable, there will likely be many more witnesses). Thus, there will nearly always be testimony on at least tangential issues, untainted by any error, no matter how egregious.

A favorite line among some of my colleagues in discussing harmlessness is "a reasonable jury could have found." And thus, no matter what showing a defendant may make regarding how damning the error was to his cause, the appellate court (particularly if it sanctions inference piling) will always be in a position to state "a reasonable jury could have found" and rely on whatever untainted testimony (and inferences, tenable and otherwise) exists in the record. The majority has constructed a hurdle that cannot be cleared, not because of its height, but because of the wall on the other side.

---

[6] Although there would certainly be some question regarding exactly what this testimony might imply defendant was confessing to.

Review of error for harmlessness is by no means an easy task. This is so, in large part, because one of the most basic tenets of our system is that we do not journey behind a jury's verdict or into the jury room. There is naturally some level of difficulty in determining what we insist we have no information of, whether the jury relied on the tainted evidence.[7] A burden placed on the prosecutor to establish that he proved guilt without and beyond the tainted evidence, to the extent that the jury would have had no need for the tainted evidence, is perhaps demanding, but nonetheless certainly achievable.[8] On the other hand, given our tendency to credit the jury for possibly selecting any pearl of evidence from a sea of shells, the majority's test will place the defendant in a position of not only having to demonstrate the harm wrought by the error, but also of having to counter suppositions and inferences from other evidence that are limited only by the number of witnesses offered and the imagination of the reviewing court. The Legislature selected "affirmatively" as its level of assurance in § 26, not some more demanding term (e.g., positively, absolutely, or even clearly, etc. . . .). I fear the effect of the majority's implicit statutory modification is to replace the balancing of the scales chosen by our Legislature with one of a markedly more severe tilt.

The majority's effort today does not bode well for consistency in our law, adherence to (what is said by, as opposed to what we would prefer to be said by)

---

[7] I should point out that I am certainly not advocating a departure from our present system.

[8] Such a burden also cautions to stay within the confines of our court rules and not burden otherwise viable evidence with a taint resulting from overreaching.

our statutes, or the worthwhileness of appellate review of nonconstitutional errors (or, for that matter, preservation of such errors).

Kelly, J., concurred with Cavanagh, J.