CORRIGAN, J.
(concurring). I concur in and join every aspect of the majority opinion. I write separately to suggest an analytic approach to the sole remaining issue to be resolved on remand in People v Schaefer, i.e., whether the trial court committed error requiring reversal when it reminded the jury three times during instructions about defendant’s stipulation regarding his blood-alcohol level of 0.16 grams.
*448 As the majority correctly observes, ante at 445 n 81, in determining whether the multiple references to the stipulation constitute an error requiring reversal, the Court of Appeals should consider whether defendant has established that a “miscarriage of justice” occurred, as required by MCL 769.26 and People v Lukity, 460 Mich 484; 596 NW2d 607 (1999).
In assessing whether a miscarriage of justice occurred, I believe it is noteworthy that defendant is mistaken in assuming that his blood-alcohol level at the time of the accident is the sole factor that the jury was entitled to consider in finding that he was intoxicated. MCL 257.625(1) clearly provides two independent bases on which the jury could have concluded that defendant was intoxicated. Specifically, at the time defendant was charged, § 625(1) provided that a defendant is considered intoxicated for the purpose of OUIL causing death if either of the following applies:
(a) The person is under the influence of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance.
(b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.
Thus, pursuant to § 625(1), the jury could have found that defendant was intoxicated either on the basis of evidence of defendant’s blood-alcohol level, or on the basis of evidence presented at trial demonstrating that defendant was “under the influence of intoxicating liquor.”
In instructing the jury, the trial court repeatedly informed the jury of these two alternative bases:
The Court: So, the elements are either operating under the influence, that’s one. Or, operating a motor vehicle while the blood alcohol content is 0.10.
*449 It’s either driving under the influence, or driving with a blood alcohol content of 0.10. And as a result of so operating a motor vehicle, causes the death of another person.
Those are the elements of Count 1 [OUIL causing death],...
So, if you find in Count 1 [OUIL causing death] that the defendant operated a motor vehicle under the influence of intoxicants, or that he at the time had a blood alcohol level in excess of .10. And that as a result of that, a person was killed. That is what you call homicide caused by driving under the influence. [Emphasis added.]
Moreover, the trial court explicitly instructed the jury that it was free to reject defendant’s stipulation about his blood-alcohol level. Specifically, the trial court told the jury, “You have a right to accept [the stipulation], or you have a right to reject it. It’s entirely up to you.” It is thus quite possible that the jury chose to ignore completely defendant’s stipulation about his blood-alcohol level when it found defendant guilty of OUIL causing death.[1]
*450 Accordingly, in addressing on remand whether the trial court committed error requiring reversal in making repeated references to the stipulation, the Court of Appeals should consider the alternative bases provided by § 625(l)(a) and (b) and the trial court’s instruction that the jury was entitled to disregard the stipulation.

 The prosecution presented various evidence at trial to demonstrate that defendant was “under the influence of intoxicating liquor,” pursuant to § 625(l)(a). First, defendant himself admitted that he consumed at least three beers before getting behind the wheel. Defendant also admitted that his blood-alcohol level was 0.16 grams less than three hours after the accident and that he did not consume any alcoholic beverages between the time of the accident and when his blood was later drawn at the hospital. The accident occurred about 10:08 p.m., and defendant’s blood was drawn at the hospital about 12:56 a.m. The victim, defendant’s passenger, had a blood-alcohol level of 0.35 grams approximately forty minutes after the accident occurred. Three hours after the accident, the victim’s blood-alcohol level had declined to 0.24 grams.
*450 Second, several eyewitnesses told the police that defendant was tailgating various cars on the freeway, driving erratically, and swerved suddenly to get off the highway. Evidence was presented at trial that defendant followed a car on the freeway for one mile with less than one-half of a car length between the vehicles and while traveling at a speed of sixty-five miles an hour. Defendant acknowledged that the other two lanes of the freeway were clear for the entire mile that he was tailgating. Defendant then proceeded to tailgate a tractor-trailer in a similar manner.
Third, when the police investigated the crime scene, officers found numerous empty bottles of alcohol in defendant’s vehicle. In addition to the empty bottles of beer, the police also found an empty vodka bottle in defendant’s vehicle. Defendant denied drinking any vodka on the night of the accident.
Fourth, the nature of the accident itself was described in great detail at trial. Defendant suddenly swerved to get off the freeway and his vehicle rolled over. In the prior twenty years, there had been no rollover accidents on that same freeway exit.