Cavanagh, J.
(concurring in part and dissenting in part). I agree with the majority that the testimony at issue in this case did not involve statements that satisfy the “spontaneous” requirement of MRE 803A, and, as a result, the trial court abused its discretion when it allowed the testimony. I disagree, however, that this error was harmless. I think that a full review of the record reveals that this case rested largely on the complainant’s credibility, and, as the prosecution stressed in its closing argument, Stacy Morgan’s corroborating testimony bolstering GA’s credibility was an essential piece of evidence that was critical to the outcome of this case. Therefore, I think that defendant has satisfied his burden under People v Lukity, 460 Mich 484; 596 NW2d 607 (1999), to show that it is “more probable than not” that a different outcome would have resulted absent Morgan’s testimony. Thus, I respectfully dissent from part III(B) of the majority opinion.[1]
The majority’s harmless-error analysis goes astray in several places. First, the majority glosses over the key details regarding the important facts in this case. Second, the majority gives insufficient weight to this Court’s caselaw regarding the importance of improperly admitted hearsay. Finally, I disagree with the majority’s attempt to minimize the importance of the hearsay testimony to the prosecution’s case.
To begin with, the majority ignores several key details regarding the facts that it relies on to argue that *628 there was evidence, other than Morgan’s testimony, that corroborated GA’s testimony.
First, the majority states that “the most damaging of this [corroborative] evidence” was Lori’s testimony “that she walked in to GA’s room at 3:30 a.m. and found defendant kneeling at GA’s bed, with the bedcovers pushed down, touching GA in the leg area.” Ante at 624 (emphasis added). The majority mischaracterizes Lori’s testimony and overlooks a potentially innocent explanation for the evidence that it finds so damning. A full review of the record indicates that Lori testified that defendant stayed up late playing video games with her son on the night that she saw defendant in GA’s room. She also testified that she had told defendant previously that she preferred that GA sleep in her pajamas, but, on that night, she had put GA to bed in her street clothes because GA had fallen asleep in the living room. When Lori confronted defendant about what he was doing in GA’s room, he explained that he had changed GA into her pajamas. Further, while the majority states that Lori saw defendant “touching GA in the leg area,” the record indicates that what Lori actually testified is that she saw defendant’s hand “between [GA’s] knee and feet,” which has much less sinister implications. In light of these details, the corroborative nature of this particular evidence is substantially weakened, along with the majority’s harmless-error conclusion.
Second, the majority also ignores several important details surrounding the nurse’s and investigating detective’s testimony. As the majority notes, the nurse testified that GA had a scratch on her labia minora, and the investigating detective testified that defendant’s fingernails were jagged or sharp when he interviewed defendant. Although the majority acknowledges that the nurse testified that the scratch likely occurred in the 24 *629 to 48 hours preceding her examination of GA, it fails to mention that the exam occurred five days after defendant allegedly sexually abused GA. Nor does the majority consider that the nurse testified that the scratch could have resulted from totally innocent behavior, such as a child playing. Furthermore, the nurse’s testimony regarding GA’s description of what had happened to her corroborates at most one instance of sexual abuse. It does not corroborate the testimony related to the other accusation of sexual abuse against defendant. Again, when this particular evidence is considered in context, its corroborative nature is substantially weakened, and the majority’s harmless-error conclusion is further eroded.
The majority also gives insufficient weight to this Court’s caselaw when it concludes that the prejudicial nature of the error was limited because GA testified at trial and was subject to cross-examination, making Morgan’s testimony merely corroborative and cumulative. In making these generalizations, the majority pays lip service to this Court’s warnings that “the fact that the statement was cumulative, standing alone, does not automatically result in a finding of harmless error,” People v Smith, 456 Mich 543, 554; 581 NW2d 654 (1998), and that hearsay evidence may tip the scales against a defendant when a case presents a credibility contest, especially when the declarant is a young child. People v Straight, 430 Mich 418, 427-428; 424 NW2d 257 (1988); Smith, 456 Mich at 555 n 5. Unfortunately, however, the majority largely fails to heed those warnings in reaching its conclusion.
To start with, the utility of cross-examining a seven-year-old girl is debatable. In order to avoid the appearance of bullying a child before the jury, “no defense lawyer will subject a small child to an unnecessarily *630 traumatic courtroom experience,” even at the expense of leaving a possible error in the testimony undiscovered. Christiansen, The testimony of child witnesses: Fact, fantasy, and the influence of pretrial interviews, 62 Wash L R 705, 719 (1987). Further, a child “will adopt false memory as truth and be unable to distinguish the source of what she recalls. The sources of her knowledge are obscured and the possibility of falsehood hidden behind her sincere belief in the truth of her memory.” Id. This concern is reflected in MRE 803A’s limitations on the admissibility of hearsay statements made by children, which require that a child’s statements be made as soon as practicable after the incident and that the statements be spontaneous and without indication of manufacture. Therefore, given that Morgan’s suggestive questioning occurred before GA testified at trial, cross-examination may have been useless in this case. As a result, the jury may have been “presented with an unshakably false basis for assessing the weight of her testimony,” and defendant’s felony convictions may have been based on inaccurate information that was impossible to test. Id. at 719-720.
Also, the majority’s reliance on MCL 750.520h to argue that the prosecution in this case did not need to corroborate GA’s testimony is misplaced. The credibility of GA’s testimony was a critical issue because there was little physical evidence in this case. Indeed, as the majority notes, GA’s testimony was the only basis for defendant’s conviction for one of the alleged incidences of abuse. Presumably, the only support for the jury’s finding was its belief that GA was credible, which was unfairly bolstered by the inadmissible hearsay. Therefore, as the majority acknowledges, the prosecution did not need to corroborate GA’s testimony only if we are willing to “assum[e\ . . . that the jury found her credible.” Ante at 623 n 52 (emphasis added).
*631 The fact that GA’s credibility was the key issue is precisely why the error was not harmless: Morgan’s erroneously admitted hearsay testimony strongly bolstered GA’s credibility. Thus, as the majority admits, we are left to assume that even without Morgan’s testimony the jury would have found GA credible. This case simply presents too many unknowns to base multiple serious criminal convictions on a bare assumption.
Furthermore, there are several problems with the majority’s reference to GA’s credibility. First, it inaccurately states that GA’s statements were “consistent over time.” This ignores that several days after Morgan’s conversation with her, GA made a seemingly inconsistent statement when she asked Lori, “Mommy, what if it was a bad dream?”
Second, the majority’s statement that it is not commenting on GA’s credibility is incorrect and irrelevant. The majority does comment on the credibility of GA’s testimony when it notes that GA’s statement “remained consistent over time.” Ante at 623 n 52. Because the majority must rely on GA’s admittedly inadmissible statement to Morgan to label her statements “consistent,” the majority only compounds the harm and proves that Morgan’s testimony was critical to the prosecution’s case.
Third, the majority’s commentary on the credibility of GA’s statements is irrelevant. The question is not whether this Court finds GA credible but whether the inadmissible hearsay unfairly influenced the jury’s ability to determine GA’s credibility. Because it is more probable than not that the hearsay influenced the jury and affected the trial’s outcome, the error was not harmless.
Contrary to the majority’s claim, I do not discredit GA’s testimony “in toto.” Rather, I merely note that *632 children, by no fault of their own, are highly susceptible to influence. On the basis of this widely accepted observation, which the majority accepts, I conclude that the jury’s ability to determine whether it found GA’s testimony credible was unfairly influenced by Morgan’s inadmissible testimony to the point that the error was not harmless.
Finally, the majority’s attempt to minimize the importance of Morgan’s hearsay testimony to the prosecution’s case is also misleading. Ante at 622 n 50. Simply because the prosecution listed Morgan’s testimony as the “fifth reason” supporting conviction in her closing argument is not evidence that the testimony was not important. The order in which the prosecution presented the supporting evidence in her closing argument is not an indication of the weight that the prosecution or, more importantly, the jury gave the evidence. And, even if the order of presentation did somehow relate to the testimony’s importance, it should be noted that in the first paragraphs of its closing argument, the prosecution stressed that GA’s believability was key to the case. Furthermore, the first sentence of the prosecution’s discussion of Morgan’s testimony during closing argument stressed that Morgan’s testimony “corroborated everything that [GA] said on the stand .. . .” Similarly, it is irrelevant that “the prosecutor’s discussion of Morgan’s testimony accounts for less than 21h transcript pages,” given that this is no indication of the weight that the jury gave Morgan’s testimony. Indeed, in People v Snyder, 462 Mich 38; 609 NW2d 831 (2000), we remanded for a new trial under the Lukity standard because of an erroneous evidentiary ruling by the trial court that affected the complainant’s credibility. We reasoned that, much like this case, “the prosecution’s case rested almost entirely on the testimony of the *633 complainant,” and the “prosecutor took advantage of the circuit court’s erroneous ruling during her closing argument.” Id. at 44-45.
In summary, defendant’s convictions largely rested on GA’s credibility, and, as the prosecution stressed, Morgan’s corroborating testimony bolstering her credibility was an essential piece of evidence in this case.[2] Furthermore, much of the admissible “corroborating” evidence cited by the majority is less convincing when viewed in context, and the majority’s conclusion that this case was not merely a credibility contest is called into question. Finally, as the majority acknowledges, this Court has held that hearsay evidence is more harmful in credibility contests, particularly when the declarant is a young child. Accordingly, I do not agree with the majority that the trial court’s abuse of discretion was harmless error, and I would remand for a new trial.
Kelly, C.J., concurred with Cavanagh, J.

 Although I remain committed to my Lukity dissent, 460 Mich at 504-510 (Cavanagh, J., dissenting), because I think that defendant is entitled to a new trial even under the higher burden created by the majority in Lukity, I will apply that standard here.

 Indeed, the trial court based its decision to deny defendant’s motion for a directed verdict on its belief that “[t]he complainant... has been absolutely consistent with her version of events from the first time she disclosed it [to Morgan] through ... her testimony in court.”