*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

**S T A T E   O F   M I C H I G A N**

**C O U R T   O F   A P P E A L S**

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA LEE THORPE,

        Defendant-Appellant.

UNPUBLISHED
March 24, 2022

No. 355292
Allegan Circuit Court
LC No. 13-18428-FH

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact with a person less than 13 years of age by a person 17 years of age or older). The trial court sentenced defendant to concurrent prison terms of 80 to 150 months for each conviction. We affirm.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

The victim in this case is a minor child, BG. Defendant was in a romantic relationship with BG's mother from 2006 until 2010, and had a child with her. In 2012, BG said that defendant had sexually assaulted her. In 2016, defendant was convicted of three counts of CSC-II related to this assault. However, our Supreme Court ultimately vacated his convictions on the ground that the trial testimony of the prosecution's expert witness, Thomas Cottrell (Cottrell), had impermissibly vouched for BG's credibility. See *People v Thorpe*, 504 Mich 230, 259; 934 NW2d 693 (2019). Defendant's case was remanded to the trial court for a new trial. *Id*. at 266.

At the second trial, BG's mother testified that she had dated and lived with defendant from 2006 until 2010. BG was not defendant's biological daughter, but she considered him to be a father figure. When BG's mother separated from defendant, they arranged for BG to have parenting time with defendant. BG testified that she would sleep in defendant's bed with defendant when she was at his house. On one occasion during the summer of 2012, she awoke to defendant touching her vagina under her pajama bottoms and underwear. She told him to stop and pushed his hand away. During that same night, she woke up again to defendant touching her vagina, but over her underwear. She again told defendant to stop. BG also testified that on a separate occasion

-1-

defendant had grabbed her wrist and put her hand on his unclothed penis. After a few months, BG disclosed defendant's abuse to his half-sister. Defendant's half-sister then told defendant's mother, who eventually informed BG's mother. BG later disclosed the assaults to a City of Allegan police officer.

At defendant's second trial, Cottrell again testified as an expert witness in the field of child sexual abuse dynamics and offender dynamics. Among other questions, the prosecution asked Cottrell why child victims of sexual assault sometimes delay their disclosure, whether a child victim's relationship to the abuser would delay disclosure, and whether a child victim's trauma may confuse the victim about how to respond or disclose. The trial court overruled defendant's objections, and Cottrell answered the questions.

The jury convicted defendant as described. This appeal followed. On appeal, defendant challenges his convictions on the basis of alleged errors in the admission of Cottrell's testimony.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion preserved claims of evidentiary error. *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire case, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks and citation omitted).

MRE 702 provides in relevant part:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Expert testimony is generally admissible if it describes the "typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim." *People v Peterson*, 450 Mich 349, 352-353, 373; 537 NW2d 867 (1995). It is also generally admissible to explain the "consistencies between the behavior of the particular victim and other victims of child sexual abuse." *Id*. However, an expert "may not testify that the sexual abuse occurred, . . . may not vouch for the veracity of a victim, and . . . may not testify whether the defendant is guilty." *Id*. Specific to this issue, our Supreme Court held in defendant's previous appeal that an expert witness may not testify "that children overwhelmingly do not lie when reporting sexual abuse because such testimony improperly vouches for the complainant's veracity." *Thorpe*, 504 Mich at 235.

Defendant argues that Cottrell's testimony in the second trial again impermissibly vouched for BG's credibility. We disagree. In defendant's first trial, Cottrell testified that children lie about sexual abuse only 2% to 4% of the time, and he identified only two scenarios in which such lies might occur, neither of which was relevant to the case at hand. *Thorpe*, 504 Mich at 259. Our Supreme Court held that the clear import of Cottrell's testimony was that there was "a 0% chance" that BG had lied. *Id*. The differences between Cottrell's statements in defendant's two trials are significant. During the second trial, Cottrell did not offer any evaluation, statistical or otherwise, of the probability that a child would lie about being sexually abused. Nor did Cottrell comment about the rate of false disclosures.

Defendant argues that Cottrell's testimony was nonetheless impermissible because the prosecution's hypothetical questions encompassed the specific facts of defendant's case. Specifically, defendant contends that Cottrell provided impermissible testimony when the prosecution asked whether an "eight-year-old, approximately eight-year-old, is touched by her—someone she looks to be her father, would that—would it be inconsistent for her to be confused by that?" Viewing the testimony in the overall context of the prosecution's questions, however, we disagree that the admission of the testimony was in error.

The prosecution first asked Cottrell to explain whether a child victim of sexual abuse may delay disclosure of his or her sexual abuse. Cottrell responded in pertinent part:

> Okay. When we are talking about child sexual abuse as opposed to an adult, we really look at essentially three major components as to reasons why children don't disclose. And it's kind of on a continuum. So on one end of the continuum, we have children who are so traumatized by what has happened and that's usually when the abuse has been physically painful and they have been terrified, that they simply can't connect to the words to be able to disclose the abuse. It causes flashbacks, it causes terror when they simply talk about it. So those children usually don't report right away.

The prosecution then asked:

> Let me give you the scenario again. If the child's abuser, the person that's sexually contacting them, is someone that they know, like a father figure, someone that they have love for, would a delay in reporting be inconsistent in that circumstance?

Cottrell answered that "it is not at all inconsistent" because the child might have loyalties to the individual who has sexually abused them. The prosecution then asked Cottrell "if an eight-year-old, approximately eight-year-old, is touched by her—someone she looks to be her father, would that—would it be inconsistent for her to be confused by that?" Cottrell answered:

> Assuming there had been no previous teaching or with regard to the appropriateness of sexual contact one way or another, I would suspect that a child of that age, being touched by someone identified such as you did, would be very confused and anxious, but not really probably knowing how to respond.

Given the context of the prosecution's questions and Cottrell's answers, the trial court did not abuse its discretion when it allowed Cottrell's testimony. Rather than vouch for BG's credibility, either explicitly or by implication, Cottrell's answers were based on his expertise in the field of child sexual abuse dynamics and served only to explain why a child victim's specific behavior was not inconsistent with that of an abuse victim; more specifically, Cottrell's answers addressed the defense's claim that a delay in a child victim's disclosure of abuse indicated that the disclosure was false or unreliable. See *Peterson*, 450 Mich at 373.

The prosecution also posited a scenario in which a child "experiences trauma for whatever reason, and the trauma being—being betrayed and having to have a sexual abuse occur to them," and asked Cottrell whether the child would "always remember the event in sequence of—the exact sequence that happened." Cottrell answered:

> Well, I want to—the short answer is yes, they can certainly confuse them. But I would also want to add that memory in and of itself can be a little faulty in that regard and trauma doesn't necessarily need to play a role in sequence confusion. That can happen with anybody with any memory that has any length of time to it. So trauma can contribute to that, fear can contribute to that. But confusing sequence is just a natural degradation of memory itself.

The prosecution asked further, "So if someone says this happened first, and then this happened, but then later mixes the two up, would that be inconsistent with the abuse actually happening to them?" Cottrell answered, "No. It wouldn't."

The trial court did not abuse its discretion by admitting this testimony. Although defendant argues that the prosecution's questions "were designed to show that any flaws in BG's testimony were perfectly okay," the fact remains that Cottrell's *answers* were limited to explaining why a child victim's behavior was not inconsistent with that of an abuse victim. See *Peterson*, 450 Mich at 373. The record shows that Cottrell avoided the errors in his previous testimony noted by our Supreme Court in *Thorpe*. See *Thorpe*, 504 Mich at 235.

Furthermore, the trial court instructed the jury regarding its duty to decide the case with the available evidence that was presented. The trial court stated in relevant part:

> When you discuss the case and decide on your verdict, you may only consider the evidence that has been properly admitted in this case. Therefore, it is important for you to understand what is evidence and what is not evidence.

> Evidence includes only the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.

> Many things are not evidence, and you must be careful not to consider them as such. I will now describe some of the things that are not evidence.

> \* \* \*

> You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge. The lawyers' questions to

the witnesses, your questions to the witnesses, and my questions to the witnesses are also not evidence.

Additionally, the trial court specifically instructed the jury regarding Cottrell's testimony:

> You have heard testimony from a witness, Thomas Cottrell, who has given you his opinion as an expert in the field of child sexual abuse. Experts are allowed to give opinions in court about matters that they are experts on.

> However, you do not have to believe an expert's testimony. Instead, you should decide whether you believe it and how important you think it is.

> When you decide whether you believe an expert's opinion, think carefully about the reasons and facts he gave for his opinion and whether those facts are true. You should also think about the expert's qualifications and whether his opinion makes sense when you think about the other evidence in the case.

> As I've indicated, you heard Thomas Cottrell's opinion about the behavior of sexually abused children. You should consider that evidence only for the limited purpose of deciding whether [BG's] acts and words after the alleged crime were consistent with those of sexually abused children.

> That evidence cannot be used to show that the crime charged here was committed or that the Defendant committed it. Nor can it be considered an opinion by Thomas Cottrell that [BG] is telling the truth.

Therefore, even if the prosecution's questions themselves suggested that BG was credible, the trial court instructed the jury that those questions were not evidence. And even if Cottrell's answers had strayed over the line into improper vouching, there is no indication that the admission of those answers would have been outcome-determinative in light of the trial court's instruction. See *Lukity*, 460 Mich at 495-496. "Jurors are presumed to follow their instructions and instructions are presumed to cure most errors." *People v Mann*, 288 Mich App 114, 122 n 23; 792 NW2d 53 (2010) (quotation marks and citation omitted).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra