*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ERIC JON ARCHAMBAULT,

       Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 344945
Barry Circuit Court
LC No. 2017-001045-FC

Before: MARKEY, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree criminal sexual assault (CSC-I), MCL 750.520b(1)(b), and accosting a child for immoral purposes, MCL 750.145a. The jury acquitted defendant of three additional CSC-I charges. The trial court sentenced defendant to 180 to 540 months' imprisonment for the CSC-I conviction and 12 to 48 months' imprisonment for the accosting a child for immoral purposes conviction. We conclude that our Supreme Court's decision in *People v Thorpe*, 504 Mich 230; 934 NW2d 693 (2019),[1] compels us to reverse and remand for new trial.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The complainant in this case, AA, sent a friend a text message implying that defendant, her father, had sexually assaulted her. AA's friend told his mother, who called the police. AA told

---

[1] The *Thorpe* opinion resulted from two consolidated appeals to our Supreme Court from this Court's decisions in *People v Thorpe*, unpublished opinion per curiam of the Michigan Court of Appeals, issued August 10, 2017 (Docket No. 332694), and *People v Harbison*, unpublished opinion per curiam of the Michigan Court of Appeals, issued January 26, 2017 (Docket No. 326105). See *Thorpe*, 504 Mich at 235. The Supreme Court, after stating the legal principles applicable to both cases, applied those principles to each case individually. Much of our analysis in this case is based on the Court's application of these principles to the appeal in *Harbison*. See *id.* at 260-266.

the responding officer that her father had touched her inappropriately. Defendant was arrested. Before trial, AA underwent a medical examination by Dr. N. Debra Simms, M.D.

AA was 15 years of age at the time of trial. She testified that her father regularly gave her massages after cheerleading practice. She stated that the massages appeared innocuous in the beginning, as defendant would just rub her back, which helped relieve pain. Eventually, however, defendant began to also massage her buttocks, although that area of her body did not hurt, and to "rub around [her] vagina." Defendant also massaged her breasts and, at least once, tried to get her to touch his penis through his underwear. AA testified that defendant put his fingers into her vagina at least 10 times and that defendant also placed his penis into her vagina on more than one occasion.

The prosecution presented the testimony of Dr. Simms, who had been qualified as an expert in the field of medical evaluation of child sexual and physical abuse in innumerable cases.[2] Dr. Simms testified that she had performed a full medical examination of AA. According to Dr. Simms, AA stated during the examination "[t]hat she was there because [her] dad touched [her]," that he had placed his fingers "inside" her vagina on multiple occasions over the course of the previous year, and that it "kind [sic] hurt." The examination revealed no injuries or other physical evidence corroborating AA's allegations. When asked about her overall assessment and findings, Dr. Simms testified that her "diagnosis was suspected pediatric sexual abuse is confirmed." The trial court admitted her examination report into evidence. During cross-examination, Dr. Simms explained that despite the lack of physical evidence derived from her examination or testing, she "confirmed" the suspicion of sexual abuse because she "believe[d] that [the victim] was abused, yes, sir."[3]

A sergeant with the Computer Crimes Unit of the Michigan State Police testified that he had examined defendant's cellular phone activity and contents, and discovered that defendant's phone had been used to look at pornographic images and videos at or near the time that defendant sent text messages to AA, although he could not identify who specifically was using the phone. The sergeant testified that the pornographic images and videos viewed on the phone were legal and that the user had also searched "what to do" if "wrongfully accused of sexual assault."

Defendant was convicted as described. This appeal followed.

## II. STANDARD OF REVIEW

"[A] trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). An abuse of discretion

---

[2] One of those cases was *Harbison*. See *Thorpe*, 504 Mich at 243-248.

[3] Another witness, Thomas Cottrell, testified for the prosecution as an expert in child sexual abuse dynamics, and discussed the characteristics of child sexual abuse victims generally. Although defendant does not challenge Cottrell's testimony, we note that similar testimony from Cottrell was also found to have improperly vouched for the victim's credibility in *Thorpe*, 504 Mich at 259.

-2-

occurs when the trial court "selects an outcome falling outside the range of principled outcomes." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). "[I]t is necessarily an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). However, even an error in the admission of evidence may not be grounds for reversal "unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Denson*, 500 Mich 385, 409; 902 NW2d 306 (2017) (quotation marks and citation omitted). "[T]he appropriate inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (quotation marks and citation omitted).

### III. ANALYSIS

Defendant argues that the trial court erred by admitting Dr. Simms's testimony concerning her diagnosis of "confirmed" "suspected pediatric sexual abuse" and her statement that she believed AA. We agree.

Our Supreme Court in *Thorpe* stated that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the 'conclusion [is] nothing more than the doctor's opinion that the victim had told the truth.' " *Thorpe*, 504 Mich at 255, quoting *People v Smith*, 425 Mich 98, 109; 387 NW2d 914 (1986). "Such testimony is not permissible because a jury is in just as good a position to evaluate the victim's testimony as the doctor." *Id*. (quotation marks, citation, and alteration omitted). The Supreme Court further noted that cases such as *Smith* and *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995), provided a longstanding and "very straightforward bright-line test that trial courts can readily observe." It concluded that a trial court's admission of an expert's opinion that sexual assault had occurred, absent some corroborating physical evidence, constituted plain error. *Id*. at 262. The Supreme Court explained the reasoning behind its decision at length:

> The use of expert testimony in the prosecution of criminal sexual conduct cases is not an ordinary situation. Given the nature of the offense and the terrible consequences of a miscalculation—the consequences when an individual, on many occasions a family member, is falsely accused of one of society's most heinous offenses, or, conversely, when one who commits such a crime would go unpunished and a possible reoccurrence of the act would go unprevented—appropriate safeguards are necessary. To a jury recognizing the awesome dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat. [*Id*. at 263-264 (citation omitted).]

Accordingly, because the case was "largely a credibility contest," the Supreme Court held that the admission of Dr. Simms's expert opinion in *Harbison* "invaded the province of the jury to determine the only issue in the case," improperly bolstering the victim's credibility and thereby affecting the integrity the trial and the reliability of the jury's verdict. *Id*. at 265-266.

In this case, Dr. Simms testified that even though her examination and testing had not revealed any physical evidence of abuse, she had nevertheless "confirmed" a diagnosis of

"suspected pediatric sexual abuse" on the basis of AA's medical history as reported. This testimony was extremely similar to the testimony that Dr. Simms had given in *Harbison*, where she testified that, notwithstanding a lack of physical evidence, she had diagnosed the victim as suffering from "probable pediatric sexual abuse" based on "the emotional state of, and the history given by, the complainant." *Thorpe*, 504 Mich at 261 (citation omitted). Further, Dr. Simms also testified outright in this case that she believed AA, which violated our long-standing general principles against bolstering witness testimony as well as the specific principles applicable to treating physician experts in sexual abuse cases. See *Dobek*, 274 Mich App at 71 ("It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury."), see also *Peterson*, 450 Mich at 352 (finding it improper for an expert to vouch for the credibility of a victim). Because Dr. Simms's testimony in this case was nearly indistinguishable from her testimony as prohibited by our Supreme Court in *Thorpe*, and because if anything Dr. Simms's testimony in this case was even more clearly inadmissible (because in this case she testified that she had "confirmed" suspected abuse and further testified that she "believed" AA), we conclude that the trial court abused its discretion by allowing this testimony. *Yost*, 278 Mich App at 353.

Under *Thorpe*, this error was not harmless. As in *Thorpe*, this case was basically a credibility contest between defendant and AA. Defendant's partial acquittal suggests that the jury did not fully believe AA's testimony. Moreover, Dr. Simms's improper testimony was not an isolated event. The prosecution referred to Dr. Simms's testimony during closing arguments, emphasized her credentials, and stated that "[h]er medical findings were consistent with pediatric sexual abuse." During rebuttal argument, the prosecution again referred to Dr. Simms's testimony and emphasized that Dr. Simms had "worked for so many years . . . with victims of sexual assault." The jury was aware that Dr. Simms was a medical doctor who specialized in the treatment of abused children and who had been qualified as an expert in the field of medical evaluation of child sexual and physical abuse.

Further, although the prosecution affirmatively argues that the testimony of other witnesses concerning AA's and defendant's behavior after she disclosed the abuse supported AA's credibility and harmed defendant's, the potential impact of Dr. Simms's improper expert testimony was such that, as in *Thorpe*, it "very likely bolstered [AA's] credibility and affected the verdict" and therefore "seriously affected the integrity of [defendant's] trial." *Id*. at 265-266; see also *Lukity*, 460 Mich at 495; *Denson*, 500 Mich at 409. Although the prosecution introduced extrinsic evidence that defendant had viewed legal pornography at or near the time that he was communicating with AA via text message, we conclude that the untainted evidence was insufficient to independently support defendant's convictions. *Lukity*, 460 Mich at 495. Accordingly, *Thorpe* requires that we reverse defendant's convictions.[4]

---

[4] In light of our resolution of this issue in defendant's favor, we need not address defendant's additional arguments on appeal.

Reversed and remanded for a new trial.  We do not retain jurisdiction.


/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Mark T. Boonstra