*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VICTOR MANUEL CUELLAR,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2024

No. 365684
Allegan Circuit Court
LC No. 2021-024943-FH

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant was convicted by jury of malicious destruction of personal property, MCL 750.377a(1)(b)(*i*) ($1,000 or more but less than $20,000). The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to serve 9 days in jail and 24 months of probation. On appeal, defendant argues that the trial court erred when it determined that the prosecution exercised due diligence to find one of the victim witnesses before the trial court declared her unavailable at trial, violating the rules of evidence and defendant's constitutional right of confrontation. For the reasons stated in this opinion, we disagree and affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On the evening of November 8, 2021, Steven Taylor and Stephanie Owens heard "a bunch of banging outside" their residence. Taylor and Owens went outside and saw defendant—who had hedge trimmers draped over his shoulder—hitting Taylor's truck with a machete. Defendant was Taylor's neighbor; however, before the incident, Taylor had never interacted with defendant. Owens stood on the front porch, and Taylor stood in front of her on the stoop. Taylor asked defendant what he was doing; defendant laughed and swung the machete at Taylor.[1] While defendant was swinging the machete at Taylor, Taylor told Owens to call the police. Owens could

---

[1] Owens testified that defendant threatened her and Taylor with the machete by pointing it at them, grunting, and not retreating.

not find a cell phone, so Taylor went back inside to help her find it. However, when Taylor heard more loud banging, he went back outside.[2] Taylor then saw defendant carrying a basketball-sized rock from Taylor's front yard back to his house next door. Defendant was arrested the next day. The manager of the autobody shop that repaired Taylor's truck charged Taylor $3,121 for the repairs.

Owens testified at defendant's preliminary examination on December 21, 2021, where defendant was bound over on charges of malicious destruction of personal property ($200 or more but less than $1,000), MCL 750.377a(1)(c)(i),[3] and assault with a dangerous weapon, MCL 750.82. Defendant's trial was originally scheduled for October 5, 2022. The prosecution moved to declare Owens unavailable; however, Owens was ultimately located and personally served for the original trial date. Thereafter, the jury trial was rescheduled for January 25, 2023.

Before jury selection at the January trial, the prosecution again moved to declare Owens unavailable and to admit her prior testimony from the preliminary hearing. During a due-diligence inquiry, the prosecution presented Allegan City Police Sergeant Chad Dame to testify about his efforts to serve Owens for the January 25, 2023 trial date. Owens's subpoena for trial was prepared on January 9, 2023. Sergeant Dame visited Owens's residence near the incident on January 12, 2023. The homeowner told Sergeant Dame that Owens had not been there in months and he believed that she was in either Florida or Kalamazoo. The homeowner did not have a phone number to contact Owens. After researching Owens's registered address with the Secretary of State, Sergeant Dame visited the address listed in Gobles. He learned that Owens had not lived there for two years. Sometime after January 12, Sergeant Dame visited another address provided by the prosecutor's office, but learned that Owens had not lived there in two years as well.

Sergeant Dame testified that before his latest attempt to serve Owens, he successfully served her on three occasions. He served her the third time when she was incarcerated in the Allegan County Jail. Owens faced charges for drug use unrelated to the case. As of November 17, 2022, Owens was released from jail on a personal recognizance bond and had a plea hearing scheduled for February 6, 2023. Sergeant Dame explained that the last time he talked to her, she was "trying to clear things up and move to Florida." Sergeant Dame also testified that he believed she was homeless in Kalamazoo. He did not check homeless shelters in the area because he knew her to be a "couch surfer type person." Following Sergeant Dame's testimony, defense counsel argued that Owens occasionally stayed at the residence near the incident and that perhaps an additional attempt to serve her there would succeed.

The trial court concluded that the prosecution had demonstrated due diligence in the efforts undertaken to locate Owens. The court explained:

---

[2] Owens testified that Taylor did not come inside and that she found the cell phone without Taylor's assistance.

[3] The prosecution later amended the felony information to charge defendant with malicious destruction of personal property $1,000 or more but less than $20,000, MCL 750.337a(1)(b)(i).

I believe that, according to the case law, due diligence can be shown by representation of an officer of the Court.

We have Sergeant Dame here clearly stating his efforts to locate. He certainly has made attempts in the past and been successful. This time, he has not been successful.

Considering the last time that she was served, she was under arrest or incarcerated, I believe she—he's gone to the residences he could possibly have available to him. It appears he has some familiarity with—with Ms. Owens.

The Court system reflects that she has several cases pending. She does have a Court date for February 6th, but that doesn't encourage the Court to determine there wasn't due diligence just because she has a future Court date.

He's gone to at least two different addresses, talked to her on occasion. She indicates she was moving.

I think there's been reasonable efforts by the officer. And at this time, the Court has determined that she's unavailable. And the preliminary hearing transcript can be read into the record.

Owens's testimony from the preliminary examination was admitted into the record at trial. Taylor was available and testified at trial. Defendant was convicted of malicious destruction of personal property ($1,000 or more but less than $20,000), and was acquitted of assault with a dangerous weapon.

Defendant now appeals.

## II. UNAVAILABLE WITNESS AND THE CONFRONTATION CLAUSE

On appeal, defendant argues that the trial court abused its discretion when it determined that the prosecution made reasonably diligent efforts to locate Owens before the trial court declared her unavailable at trial. Additionally, defendant argues that the trial court violated defendant's right of confrontation by permitting Owens's prior testimony to be read at trial. We disagree. Given the information available to the prosecution and the efforts made to locate Owens, the trial court's due-diligence determination was not outside the range of principled outcomes. Additionally, defendant had an opportunity and similar motive to develop Owens's testimony during cross-examination at the preliminary examination such that his right of confrontation was not violated.

### A. PRESERVATION AND STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). The prosecution moved to declare Owens unavailable and admit her preliminary examination testimony. Defendant objected, arguing that the prosecution failed to demonstrate due diligence in locating Owens under MRE 804(a)(5);

however, defendant did not argue that admitting Owens's preliminary examination testimony violated his right of confrontation. Accordingly, defendant preserved the issue whether the prosecution exercised due diligence in producing Owens, but did not preserve the issue whether his constitutional right of confrontation was violated. See *id.*

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

Unpreserved evidentiary error, including alleged constitutional error, is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763, 774, 597 NW2d 130 (1999). Plain error requires that: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks, citation, and alteration omitted).

## B. UNAVAILABLE WITNESS AND THE CONFRONTATION CLAUSE

A criminal defendant has a federal and state constitutional right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. Under the Sixth Amendment's Confrontation Clause, "testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v Washington*, 541 US 36, 59, 124 S Ct 1354, 158 L Ed 2d 177 (2004). A witness's prior testimony at a preliminary examination is included in the definition of a testimonial statement. *Id.* at 68. "The purpose of the Confrontation Clause is to provide for a face-to-face confrontation between a defendant and his accusers at trial." *People v Bean*, 457 Mich 677, 682, 580 NW2d 390 (1998) (quotation marks and brackets omitted).

"Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). A witness is "unavailable" if she is "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5).[4] "The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of rules in effect at trial.

a diligent good-faith effort in its attempt to locate a witness for trial." *Bean*, 457 Mich at 684. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id.*

Asserting that the efforts in this case were less than those made in *People v Dye*, 431 Mich 58; 427 NW2d 501 (1988) and *Bean*, defendant argues that the trial court erred by determining that the prosecution exercised due diligence and a good-faith effort in its attempts to locate Owens for trial. Defendant's argument ignores that what is unreasonable in some circumstances may be reasonable in other circumstances. See *Bean*, 457 Mich at 684. The test is a question of reasonableness and depends on the facts and circumstances of the specific case. See *id.*

In *Dye*, the reasonableness of the prosecution's efforts was contingent on the fact that the prosecution and officers knew the missing witnesses had reason to go into hiding and avoid testifying. In that case, the defendant had been previously tried, which resulted in a mistrial. *Dye*, 431 Mich at 61. The missing witnesses in that case left Michigan after the killing and returned to testify at the first trial. *Id.* at 63. They were placed in protective custody immediately preceding the first trial and throughout their testimony because the defendant was a member of a motorcycle gang and the prosecution wished to prevent harm to the witnesses. *Id.* at 61-63. When a second trial was attempted after the mistrial, the prosecution failed to produce the witnesses. *Id.* at 63. In concluding that the prosecution failed to make reasonable efforts to locate the witnesses, the Supreme Court explained that the witnesses were difficult to locate for the first trial, the officer knew that the witnesses were going to leave the state after the first trial, and the witnesses had an incentive to go into hiding. *Id.* at 67. Knowing that the witnesses were a flight risk and that a second trial was necessary, the prosecution did not make efforts to remain in contact with the witnesses for two months after the mistrial. *Id.* at 67-68. The Supreme Court primarily relied on this negligent conduct to determine that the prosecution made "tardy and incomplete" efforts. *Id.* at 68.

In *Bean*, the missing witness waited ten months to go to the police with his story after witnessing a shooting. *Bean*, 457 Mich at 679. The investigating officers obtained the witness's identifying information along with the name, address, and phone number of his grandmother, with whom he lived. *Id.* at 685. The officers also obtained the phone number of the witness's mother. *Id.* Shortly before trial, the officers learned that the provided phone numbers were disconnected, and, upon visiting the mother's house, found it abandoned. *Id.* A neighbor told the officers that the witness may have moved to Washington D.C. with his mother. *Id.* at 686. The officers never went to the grandmother's address or attempted to learn her whereabouts after learning her phone was disconnected, never contacted anyone in Washington D.C., and never contacted the telephone company or postal services for forwarding information. *Id.* at 687. The Supreme Court concluded that the prosecution had not exercised due diligence to locate a witness believed to have left the state when the efforts were largely limited to unsuccessful phone calls, a visit to an abandoned residence, and checks at local jails in the two weeks before trial. *Id.* at 689. The Supreme Court compared the steps taken in *Bean* to those taken in *Dye* because the prosecution had reason to believe that the witnesses left the state in both cases. *Id.*

Defendant argues that like *Dye* and *Bean*, the efforts in this case were too little too late. However, the facts of this case are distinguishable from both of these cases. Instead, our review

of the record supports that the trial court's decision to admit Owens's testimony was not outside the range of principled outcomes." *Yost*, 278 Mich App at 353.

Unlike the prosecution and police in *Dye*, the prosecution and police in this case did not have any indication that Owens intended to avoid testyfing or was a flight risk. Instead, Sergeant Dame was able to successfully serve Owens with a subpoena three times, including for the first trial date, throughout the pendency of this case. At the time of the rescheduled trial, Owens was on a personal recognizance bond and had a plea hearing scheduled for unrelated criminal charges a couple weeks after trial. The last time Sergeant Dame talked to Owens, she told him that she wanted to settle her legal issues before moving to Florida. This information did not warn the prosecution and Sergeant Dame that Owens was a flight risk nor did it give them reason to believe that she was disincentivized to testify at trial. Given the information available to the prosecution and Sergeant Dame, defendant's criticism that the efforts were too little too late is not well-taken. The due-diligence efforts necessary to satisfy the standard in *Dye* are not applicable to the facts of this case. See *Bean*, 457 Mich at 684.

Additionally, the facts in *Bean* are not comparable to the facts in this case. In *Bean*, the officers had various leads that they did not pursue. Upon learning that the witness may have moved to Washington D.C., the officers made no effort to contact the witness in Washington D.C., such as searching for a forwarding address, nor did the officers visit the grandmother's house after learning that her phone was disconnected.

In contrast, Sergeant Dame followed up on the information provided to him in his search for Owens. As previously noted, Sergeant Dame already served Owens on three different occasions throughout the pendency of this case when he attempted to serve Owens on January 12, 2023, at the residence near the incident. The homeowner told Sergeant Dame that Owens had not lived there in months and did not have a phone number for her. Upon learning that she no longer lived at that residence, Sergeant Dame contacted the Secretary of State to check other known addresses. Sergeant Dame visited the address provided by the Secretary of State and learned that Owens had not lived there in two years. Afterward, Sergeant Dame asked the prosecution for any known addresses and checked for her at the address the prosecution provided. Again, Sergeant Dame learned that Owens had not lived at that address in two years. Sergeant Dame exhausted the addresses associated with Owens given the information available to him.

Sergeant Dame's testimony demonstrated that he had some familiarity with Owens. He knew that Owens faced her own criminal charges that she wanted to clear up and she desired to move to Florida. He also knew she may be homeless in Kalamazoo. He explained that he did not check for her in homeless shelters in Kalamazoo because he knew her to be the "couch surfer type." The record did not reveal that Sergeant Dame had information from anyone else who may have known Owens's whereabouts or leads to her location. Likewise, the record did not indicate that Sergeant Dame had any leads regarding where in Florida Owens wanted to move.

Defendant argues that Sergeant Dame could have followed up with the residence near the incident again. However, the test of whether good-faith efforts were made to procure Owens is one of reasonableness, "not whether more stringent efforts would have produced it." *Id*. The trial court was presented with evidence that, initially the prosecution did not expect Owens to become unavailable and that Sergeant Dame followed up on the information provided to him during his

search for her. Accordingly, the trial court did not abuse its discretion when it declared Owens unavailable as a witness in light of the prosecution's efforts to locate her. See MRE 804(a)(5).

Even if the trial court abused its discretion by declaring Owens unavailable, the error was harmless. Preserved evidentiary error "is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted and citation omitted). "An error is outcome determinative if it undermined the reliability of the verdict and, in making this determination, a court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013) (quotation marks and citation omitted). Both Taylor and Owens witnessed defendant strike Taylor's vehicle. Taylor testified at trial about what he witnessed. Owens's testimony constituted 8 pages of transcripts and was largely cumulative of Taylor's testimony, which constituted 22 pages of transcripts. Therefore, even if the trial court abused its discretion, such error was harmless. See *Lukity*, 460 Mich at 495-496.

Defendant also contends that Owens's absence from trial violated his constitutional right of confrontation. However, as previously noted, "[f]ormer testimony is admissible at trial under . . . the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *Garland*, 286 Mich App at 7. Owens was unavailable to testify at trial. She was subjected to cross-examination during the preliminary examination where defense counsel had similar motive to develop her testimony as an eye-witness and victim of the incident. See *id*. This satisfied defendant's constitutional right of confrontation. Accordingly, we conclude that defendant failed to establish error, let alone plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

Affirmed.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford